UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JONES,

    Plaintiff,

v.

TA OPERATING CORPORATION d/b/a
TRAVEL CENTERS OF AMERICA, INC.,

    Defendant.
_____/

Case No. 06-15028

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]**

This is a case of alleged race discrimination and retaliation brought pursuant to Title VII, 42 U.S.C. §§ 2000e-2(a)(1) (2003). This matter comes before the Court on Defendant's motion for summary judgment. The Court finds that the facts and legal arguments are adequately presented in the motion and the parties' briefs and that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), Defendant's motion will be decided on the briefs and without oral argument.

For the following reasons, Defendant's motion is GRANTED.

**I.    Facts**

Plaintiff was hired by TA Operating, LLC (successor by conversion to TA Operating Corporation) on November 23, 2004 as a porter in Travel Centers of America, Inc.'s Ann Arbor location on Baker Road in Dexter, Michigan. (Compl. ¶ 7.) This facility consists of

a convenience store, a full service restaurant, a fast food restaurant (Popeye's), a diesel repair facility, and a fuel shop which has 10 gasoline pumps and 9 double diesel pumps. (K. Stone Aff. ¶ 2.) Plaintiff's job duties as a porter included cleaning the retail, shower, and restaurant areas. (Compl. ¶ 8.)

At the time he was hired, Plaintiff received a copy of Defendant's employee handbook and agreed to become familiar with its contents and to comply with all stated policies and rules. The employee handbook provides that employees like Plaintiff are at will and can be terminated at any time without notice or reason provided. (Def.'s Ex. A, Employee Handbook at 5; Plf.'s Dep. at 137-38.)

### A. Plaintiff's Reprimands for Work Performance

Plaintiff worked as a porter for approximately six months. During that time, he received two write-ups. On April 5, 2005, Plaintiff was given a written warning for refusing to clock in and out for a number of breaks in March and April 2005. That warning stated that failure to improve would result in termination. (Ex. B, 4/5/05 counseling report; Stone Aff. ¶ 6) Plaintiff signed this document. (Plf.'s Dep. at 111.) On April 6, 2005, Plaintiff was given a verbal and written warning that a failure to improve his performance would result in termination. At the time, instead of performing his trash and cleaning responsibilities, Plaintiff was found in a TV room watching a movie. When confronted by his manager, Plaintiff responded that he could do "the fuck what he wants and he doesn't have to listen." (Ex. C, 4/6/05 counseling report; Stone Aff. ¶ 7.) After initially testifying that he recalled this write-up, Plaintiff later testified that he had heard something about the write-up but did not recall seeing it. (Plf.'s Dep. at 1112-14.)

In May 2005, Plaintiff was transferred to the position of cashier. In this job, he was responsible for following all company policies regarding accepting payment for gasoline and diesel sales. (Stone Aff. ¶ 8.) Plaintiff had a number of performance problems on this job.

On July 30, 2005, Plaintiff turned on a wrong pump. When the customer notified him of this, he authorized a second pump but did not turn off the first one. As a result, Defendant lost 112 gallons of fuel at a cost of $273.20 when a driver pumped fuel and then drove off. Plaintiff received a verbal warning that failure to improve would result in a suspension of up to three days or termination. (Stone Aff. ¶ 9; Ex. E, 8/1/05 counseling report; Plf.'s Dep. 114-17.)

On August 9, 2005, Keith Stone, the General Manager at Plaintiff's facility, had a meeting with all employees handling the cash registers and gasoline/diesel pumps. All cashiers were notified of two new policies that would take effect immediately: a "cash over/short" policy and a "drive-off" policy ("No gasoline drive offs after prepay hours will be tolerated). Cashiers were also informed of the appropriate discipline for violations of both new policies. Plaintiff acknowledged receipt of these new polices with his signature. (Ex. F, 8/9/05 policy statement; Stone Aff. ¶ 10; Plf.'s Dep. at 135-36.)

On August 11, 2005, Plaintiff had a drive-off while working as a cashier on the midnight shift; a time when customers are required to prepay or leave a credit card. Plaintiff was told that the next occurrence would result in a one-day suspension. (Ex. G, 8/11/05 counseling report; Stone Aff. ¶ 11; Plf.'s Dep. at 117-19.)

On August 12, 2005, Plaintiff received a one-day suspension for not filing the appropriate paperwork for a $54.90 drive-off before he broke shift. He was informed that

if his performance did not improve, he would receive a three-day suspension. (Ex. H, 8/12/05 suspension report; Stone Aff. ¶ 12; Plf.'s Dep. at 121-30.)

On August 19, 2005, Plaintiff received a one-day suspension for a $152.83 shortage that could not be retrieved. He was notified that the next occurrence would result in a three-day suspension or termination. (Ex. I, 8/21/05 counseling/suspension report; Stone Aff. ¶ 13; Plf.'s Dep. at 125-29.)

On September 6, 2005, Plaintiff was short $150 on his fuel paperwork. The shortage was researched for two weeks and the money was never found. As a result, his employment was terminated. (Ex. J, 9/21/05 separation report; Stone Aff. ¶ 14; Plf.'s Dep. at 130-31.)

### B. Plaintiff's EEOC Charge and Complaint

After he was terminated, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2006-01187. On August 16, 2006, the EEOC issued a determination in favor of Defendant, finding that there was insufficient evidence to make a determination that Title VII had been violated. (Ex. K.)

On November 9, 2006, Plaintiff filed a complaint in this Court, alleging claims of race discrimination and retaliation in violation of Title VII.

## II. Summary Judgment Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c)

4

mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

This matter is presently before the Court on Defendant's motion for summary judgment, arguing that Plaintiff's race discrimination and retaliation claims should be dismissed. The Court first addresses Plaintiff's claims that Defendant intentionally discriminated against him by not recommending him for entry into the Manager in Training ("MIT") Program, by failing to promote him to lead cashier, and for terminating him; all because of his race.

### A. Race Discrimination Claims

A plaintiff seeking recovery under Title VII bears the burden of proving a prima facie case of discrimination by presenting either direct evidence of intentional racial discrimination or circumstantial evidence, following the *McDonnell Douglas* burden-shifting analysis. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547 (6th Cir. 2004).

Plaintiff concedes that he has no direct evidence of race discrimination. (Resp. at 9.) Accordingly, his disparate treatment, race discrimination claims will be analyzed under the *McDonnell Douglas*[1] burden-shifting analysis. Under this analysis, a plaintiff must first establish a prima facie case of race discrimination by showing that (1) he is a member of a protected class, (2) he was subject to an adverse employment action, (3) he was qualified for the position at issue, and (4) he was treated differently than similarly situated employees outside his protected class. *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004).

If a prima facie case is established, the defendant can rebut the presumption of unlawful discrimination by setting forth a legitimate, non-discriminatory business reason for the challenged employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Once this is done, the burden shifts back to the plaintiff to show that the articulated reason was a mere pretext for intentional race discrimination. *McDonnell Douglas*, 411 U.S. at 804. "A plaintiff can refute the legitimate, nondiscriminatory reason articulated by the employer to justify an adverse employment action by showing that the proffered reason

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotation and citation omitted).  "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[] intentionally discriminated against him."  *Id.* (internal quotation and citation omitted).

### 1.  Prima Facie Case

Defendant argues that Plaintiff has not established the third and fourth elements of his prima facie case; i.e., that he was qualified to be recommended for the MIT Program and that similarly-situated employees outside the protected class were treated more favorably by (1) being recommended for the MIT Program, (2) being promoted to lead cashier, and (2) being suspended rather than terminated for similar conduct.

### a.  Plaintiff Was Not Qualified for Recommendation to MIT Program

As to the third element, Defendant argues that the decision to recommend an employee for the MIT Program is based on qualifications and job performance, and Plaintiff did not qualify in either category.  This Court agrees.

In support of its argument, Defendant presents the affidavit of Keith Stone, the general manager of the Ann Arbor facility where Plaintiff worked.  (Ex. D.)  In his affidavit, Mr. Stone testifies as follows.  He is responsible for managing all employees at the Ann Arbor facility and is familiar with Plaintiff and his work performance as well as that of all other employees at that facility.  (Stone Aff. ¶¶ 3, 4.)

7

The goal of Defendant's Manager in Training Program is to attempt to find the highest quality employees and offer them the opportunity to become managers. Employees are recommended to the Program by the general manager of the facility where that employee works. The general manager must make the recommendation to the district manager. After an initial interview, the appropriate individual will be recommended and interviewed again by a marketing specialist. After an individual is accepted into the Program, he spends 18 months to 2 years in training; and, if successful, may become a manager. There is no salary increase or promotion involved unless and until the individual successfully completes the MIT Program. (Stone Aff. ¶ 20.)

When determining which employee to recommend for the MIT Program, General Manager Stone reviews that employee's record. This includes evaluations, disciplinary actions, and write-ups if applicable. His goal is to choose the employees with the strongest management skills, experience, and work records. (Stone Aff. ¶ 21.) He did not recommend Plaintiff for the Manager in Training Program because, in his estimation, Plaintiff did not have the record required for such a recommendation. His decision was based solely on Plaintiff's work record and qualifications and was not based on his race. (Stone Aff. ¶ 22.)

Plaintiff fails to present any evidence that contradicts Mr. Stone's affidavit. There is no affidavit, no citation to deposition testimony, or other evidence that disputes Mr. Stone's testimony that Plaintiff was not qualified to be recommended for the Manager in Training Program. This Court is not required to speculate as to which portion of the record Plaintiff may be relying on, not is it obligated to "wade through and search the entire record for

8

some specific facts that might support" Plaintiff's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

### b. Plaintiff Was Not Treated Differently Than Similarly Situated Employees

As to the fourth element of Plaintiff's prima facie case, Defendant argues that Plaintiff has not presented evidence showing that he was treated less favorably than similarly situated employees outside his protected class. This Court agrees with Defendant.

To establish unequal treatment, Plaintiff must prove that the employee with whom he is attempting to compare himself "must be similar, that is, nearly identical, in all of the *relevant* aspects." *Noble v. Brinkler Int'l, Inc.*, 391 F.3d 715, 729 (6th Cir. 2004) (internal quotations and citations omitted).

> "[T]o be deemed 'similarly situated', [sic] the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

*Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

### (i) Recommendation For Entry Into MIT Program

First, as to recommendations for entry into the MIT Program, Plaintiff presents no evidence that a similarly situated employee outside the protected class was treated more favorably than him. Thus, even if he had satisfied the third element of his prima facie case by showing that he was qualified for entry into that program, he has not established this fourth element. Accordingly, his race discrimination claims in that regard are dismissed.

### (ii) Promotion to Lead Cashier Position

9

Plaintiff next attempts to compare himself to Kylee Irish and Vedna Bryant, arguing that these similarly situated employees outside the protected class were treated more favorably than him when they were promoted to lead cashier and he was not. Plaintiff's attempts fail.

Kylee Irish began her employment with Defendant around May 22, 2005, as a customer service representative (also known as a cashier). She was promoted to the lead cashier position on July 29, 2005. Unlike Plaintiff, at that time, Kylee Irish had no write-ups for any job performance problems or any other issues involving her employment with Defendant. (Stone Aff. ¶ 15.) Her promotion to lead cashier was based upon her work performance and race was not considered. (Stone Aff. ¶ 16.)

Vedna Bryant worked for Defendant from 1998 until 2002. She returned to employment with Defendant in August 2004. Unlike Plaintiff, Vedna Bryant had received two very strong employee evaluations (in December 2004 and in August 2005) from Defendant before being promoted to lead cashier. She was given the lead cashier position on August 7, 2005, after Ms. Irish resigned. (Stone Aff. ¶ 17.) Her promotion to lead cashier was based on her work performance and race was not considered. (Stone Aff. ¶ 18.)

Plaintiff has not presented evidence showing that he was similarly situated to either Irish or Bryant (in terms of work experience and job performance) and treated differently for the same or similar conduct. Accordingly, his race discrimination claims regarding an alleged failure to promote to lead cashier are dismissed.

**(iii) Termination**

Finally, Plaintiff attempts to compare himself to Ruth King, arguing that she was a similarly situated employee outside the protected class who was treated more favorably than him with regard to the September 6, 2005 cash drawer shortage of $150 because she got a one-day suspension and Plaintiff was terminated. Despite Plaintiff's claims to the contrary, there are important differences between his and King's employment histories on September 6, 2005.

Ruth King began working for Defendant in June 2005, roughly seven months after Plaintiff. At the time of the September 6, 2005 incident, King had no disciplinary write-ups or verbal warnings. (Def.'s Reply, Ex. A, King Personnel File.) As a result of the September 6, 2005 incident, King was suspended for one day and warned that the next violation could result in a three-day suspension or termination. (*Id.* at 30.) In contrast, during the period of time between May 2005, when he became a cashier, until the September 6, 2005 incident, Plaintiff had received (1) a verbal warning with no discipline on July 30, 2005; (2) a written warning with no discipline on August 11, 2005; and (3) two write-ups resulting in a one-day suspension each on August 12 and August 19, 2005.

### 2. Legitimate, Non-discriminatory Reason and Pretext

Even if Plaintiff had established a prima facie case of race discrimination, Defendant argues that it would nonetheless be entitled to summary judgment because Plaintiff has not presented any evidence showing that its legitimate, non-discriminatory business reasons for the challenged employment action was a pretext for intentional race discrimination. This Court agrees.

Defendant has presented evidence supporting the legitimate, non-discriminatory reasons for the challenged employment actions. Thus, Plaintiff is required present

"sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that the [D]efendant[] intentionally discriminated against him." *Johnson*, 319 F.3d at 866 (internal quotation and citation omitted).

Plaintiff has not presented any evidence refuting Defendant's articulated, non-discriminatory reason for not recommending him for entry into the MIT Program or showing that racial discrimination was the real reason for this adverse employment action. Likewise, he presents no evidence refuting Defendant's evidence that, at the time of their promotions to lead cashier, Kylee Irish and Vedna Bryant had better job performance records than Plaintiff or showing that race discrimination was the real reason he was not promoted to lead cashier. Finally, Plaintiff presents no evidence refuting Defendant's evidence that, as of the September 6, 2005 incident, Rita King had no prior warnings regarding her job performance whereas Plaintiff had received many, thus warranting the differences in disciplinary action. He also fails to present evidence refuting Defendant's evidence that only three of its employees were terminated for the same reason as Plaintiff, and the other two were Caucasian. Plaintiff's personal beliefs that Defendant took these adverse employment actions because of his race is not enough. Plaintiff's "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of [race] discrimination." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 584 (6th Cir. 2003) (internal quotes and citation omitted).

Because Plaintiff has failed to demonstrate that a genuine issue of material fact exists regarding his race discrimination claims, Defendant's motion for summary judgment is granted.

**B. Retaliation Claims**

Plaintiff's retaliation claims are analyzed under the same *McDonnell Douglas* framework used for his race discrimination claims. Thus, Plaintiff must first establish a prima facie case of retaliation. To do so, Plaintiff must show that (1) he engaged in a protected activity; (2) Defendant had knowledge of that protected activity; (3) the defendant took an adverse employment action against Plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002). Upon Plaintiff's establishing his prima facie case of retaliation, the burden shifts to Defendant employer to articulate some legitimate, non-discriminatory reason for its actions. *Id.* If the Defendant employer does so, Plaintiff then bears the burden of persuasion, by a preponderance of the evidence, of demonstrating that the employer's proffered reason was merely a pretext for the unlawful retaliation. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000). Plaintiff must provide evidence showing that the Defendant employer did not "'honestly believe'" in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir. 1998)).

Even assuming that Plaintiff can establish a prima facie case of retaliation, Plaintiff has not offered any evidence upon which a jury could reasonably base a rejection of Defendant's proffered non-discriminatory reason for each of the challenged employment actions. There is no evidence that Defendant did not "honestly believe" its proffered reasons. Because Plaintiff has failed to demonstrate that a genuine issue of material fact exists regarding his retaliation claims, Defendant's motion for summary judgment is granted.

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

This case is dismissed.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: October 23, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 23, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager